UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JERRY D. POUGH,

                     Petitioner,

     v.

WILLIAM GITTERE, *et al.*,

                  Respondents.

Case No. 3:18-cv-00191-MMD-CLB

ORDER

## I.    SUMMARY

Jerry D. Pough, the petitioner in this habeas corpus action, is incarcerated at Nevada's Ely State Prison, serving a sentence of life in prison without the possibility of parole, and a consecutive sentence of eight to twenty years in prison, upon a conviction of first-degree murder with use of a deadly weapon. After Pough initiated this case *pro se*, the Court appointed counsel for Pough, counsel amended Pough's petition, Respondents answered, and Pough replied. The Court ordered expansion of the record, and the Respondents complied with that order. The Court will now deny Pough's petition.

## II.    BACKGROUND

The evidence at trial revealed that Pough shot and killed his son, Jerry Pough, Jr. ("Jerry"), on September 19, 2009. That evening, Pough, Jerry, and two other individuals were in a car on their way to Jerry's home after a night out in Las Vegas. Jerry was driving, and Pough was in the passenger seat in the front of the car. Pough became agitated during the drive, raised a gun, and shot Jerry multiple times. The other two passengers exited the car and ran away. Police later found Jerry's car parked near his home, with Jerry slumped over the steering wheel. Jerry was transported to a hospital but did not survive. Pough was arrested in California a few weeks later.

After some four years of pre-trial proceedings, many involving questions about Pough's competence to stand trial and his representation, his jury trial commenced on February 13, 2014. Pough represented himself at trial. At the conclusion of the trial, the jury found Pough guilty of first-degree murder with use of a deadly weapon, and then, after the penalty phase of the trial, imposed upon Pough, for the murder, a sentence of life without the possibility of parole. (*See* ECF Nos. 35-12, 35-19.) The sentencing was held on September 30, 2014. (ECF No. 36-15.) The judgment of conviction was filed on October 9, 2014, with Pough adjudicated guilty of first degree murder with use of a deadly weapon and sentenced to life in prison without possibility of parole for the murder, and a consecutive sentence of eight to twenty years on prison for use of the deadly weapon. (ECF No. 36-19.)

Pough requested appointment of counsel for appeal, that request was granted, and Pough appealed from the judgment of conviction. (ECF Nos. 36-24, 36-74.) The Nevada Supreme Court affirmed on December 1, 2017. (ECF No. 36-93.)[1] This Court received a *pro se* habeas corpus petition from Pough on April 30, 2018, initiating this action. (ECF No. 1.) The Court appointed counsel for Pough on May 8, 2018. (ECF No. 3.)

Counsel filed an amended habeas petition on Pough's behalf on February 28, 2019. (ECF No. 23.) Pough's amended petition asserts the following claims:

Ground 1: Pough's federal constitutional rights were violated because the trial court "allow[ed] appointed counsel to withdraw without adequate cause."

Ground 2: Pough's federal constitutional rights were violated because the trial court "allow[ed] Pough to represent himself and waive counsel at trial."

Ground 3: Pough's federal constitutional rights were violated because the trial court "den[ied] Pough the resources to represent himself."

Ground 4: Pough's federal constitutional rights were violated because the Nevada Supreme Court "den[ied] Pough the right to represent himself on appeal."

---

[1]Pough did not file a state post-conviction petition for writ of habeas corpus.

Ground 5: Pough's federal constitutional rights were violated because "[t]he state courts denied Pough the right to a speedy trial."

Ground 6: Pough's federal constitutional rights were violated because the trial court "infring[ed] Pough's right to confront adverse witnesses."

Ground 7: Pough's federal constitutional rights were violated because the evidence at trial was insufficient to prove Pough guilty of first-degree murder beyond a reasonable doubt.

Ground 8: Pough's federal constitutional rights were violated because the trial court "allow[ed] testimony of Pough's mere arrests during his penalty hearing."

Ground 9: "The accumulation of errors in this case" violated Pough's federal constitutional rights.

(ECF No. 23 at 13-32.) Respondents filed an answer on September 2, 2019. (ECF No. 32.) Pough filed a reply on January 7, 2020. (ECF No. 44.)

On May 19, 2020, the Court ordered Respondents to expand the record to include all evidence that was before the justice court or the state district court regarding Pough's mental health. (ECF No. 46.) Respondents filed further exhibits in compliance with that order on July 20, 2020. (ECF Nos. 47, 48.)

## III.    LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a petition for a writ of habeas corpus on any claim that was adjudicated on the merits in state court unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by United States Supreme Court precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. 28 U.S.C. § 2254(d). A state-court ruling is "contrary to" clearly established federal law if it either applies a rule that contradicts governing Supreme Court law or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). A state-court ruling is "an unreasonable application" of clearly established federal law under section 2254(d) if it correctly identifies the governing legal rule but unreasonably applies the rule to the facts of the case. *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000). To obtain federal habeas

relief for such an "unreasonable application," however, a petitioner must show that the state court's application of Supreme Court precedent was "objectively unreasonable." *Id.* at 409-10; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Or, in other words, habeas relief is warranted, under the "unreasonable application" clause of section 2254(d), only if the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

## IV.   DISCUSSION

### A. Grounds 1 and 2

In Ground 1, Pough claims his federal constitutional rights were violated because the trial court allowed his appointed counsel to withdraw without adequate cause. (ECF No. 23 at 13-16.) In Ground 2, Pough claims his federal constitutional rights were violated because the trial court allowed him to represent himself and waive counsel at trial. (*Id.* at 16-21.)

Pough asserted these claims on his direct appeal, and the Nevada Supreme Court denied relief, as follows:

> Pough contends that the lower courts abused their discretion by allowing him to represent himself even though he is mentally ill. A brief overview of the relevant facts provides context for our decision.
>
> Pough's competency to stand trial was questioned before his preliminary hearing in the justice court and the matter was referred to the district court for a competency determination. In August 2011, the competency court judge heard testimony that Pough had been diagnosed with schizophrenia before his incarceration. Pough's primary care physician and a court-appointed expert testified that Pough showed symptoms of schizophrenia including delusions (he believed someone was injecting poisonous gases into his apartment and that people were trying to inject him with various poisons or diseases) and hallucinations (he heard voices telling him to do things). The doctors at Lake's Crossing, however, did not diagnose Pough with schizophrenia. The competency court judge found Pough competent to stand trial, but noted that he was likely mentally ill.
>
> After the case was remanded to the justice court, Pough asked to represent himself. The justice of the peace granted the request after a thorough canvass. The State then proceeded by grand jury and the case was docketed in the district court under a new case number. Questions regarding Pough's competency to stand trial and his mental health were repeatedly raised thereafter. In February 2013, after Pough was physically

removed from the courtroom, bit a marshal, and engaged in a bizarre display of hysterical laughter, the district court judge, Judge Ellsworth, determined that he was not competent to stand trial. He was sent to Lake's Crossing for evaluation, but the ensuing report concluded that he was competent and was not schizophrenic. Upon his return from Lake's Crossing, Judge Ellsworth re-canvassed Pough about his desire to represent himself. During the canvass, the judge asked Pough whether he had been diagnosed as mentally ill before his incarceration. Pough indicated he had no mental health history. His response contradicted the testimony presented at the 2011 competency hearing. Apparently unaware of the prior testimony and based on her understanding that Pough was not mentally ill, Judge Ellsworth permitted him to dismiss standby counsel and continue to represent himself. The State later petitioned the district court to appoint counsel for Pough over his objection. At a hearing on the State's motion, Pough again denied that he had been diagnosed with any mental illness. Trial began in February 2014 in front of a different district court judge.

[Footnote: It seems the district court judges in this case were not fully aware of the testimony elicited at the August 2011 competency hearing about Pough's history of schizophrenia. This is concerning, because when a mentally ill defendant is permitted to represent himself and dismiss standby counsel the responsibility for evaluating his ongoing competency falls on the judge's shoulders. It is therefore vital that judges have accurate and complete information regarding a defendant's mental health. We urge the Eighth Judicial District Court to take reasonable steps to ensure that defendants who have been diagnosed as mentally ill are not relied upon as the source of information about the history of their mental illness.]

Pough first claims that he did not validly waive his right to counsel. We disagree. "In order for a defendant's waiver of right to counsel to withstand constitutional scrutiny, the judge need only be convinced that the defendant made his decision with a clear comprehension of the attendant risks." *Tanksley v. State*, 113 Nev. 997, 1001, 946 P.2d 148, 150 (1997) (internal quotation marks omitted). Pough was canvassed about his desire to represent himself on several occasions. Each time, he stated that he understood the risks of self-representation. Nothing in the record suggests that Pough's mental illness kept him from understanding the risks of self-representation or otherwise making a knowing, voluntary, and intelligent decision. *See Hooks v. State*, 124 Nev. 48, 54, 176 P.3d 1081, 1084 (2008) ("The validity of a defendant's waiver of the right to counsel depends on the facts and circumstances of each case, including the defendant's background, experience, and conduct."). Giving deference to the lower courts' decisions, we conclude that they did not err. *See id.* at 55, 176 P.3d at 1085 (explaining that this court considers the record as a whole and gives deference to the district court's decision regarding self-representation).

Second, Pough claims that the lower courts failed to adequately inquire into his complaints about counsel before granting his self-representation requests. Having reviewed the record, we conclude that the judges who considered Pough's requests adequately inquired into his issues with his attorneys. *See generally Young v. State*, 120 Nev. 963, 968, 102 P.3d 572, 576 (2004) (recognizing that the trial court must adequately inquire into the defendant's reasons for wanting to dismiss counsel). Pough fails to demonstrate that those judges had a duty to try to repair his relationship with his attorneys when his decision to dismiss counsel was

voluntary. *See* SCR 253 (setting forth guidelines a court should follow when a defendant seeks to represent himself at trial). Regardless, the record does not suggest that the judges could have said or done anything to change Pough's decision to represent himself.

Third, Pough argues that Judge Ellsworth should have denied his self-representation request based on his mental illness. As support, he relies on *Indiana v. Edwards*, 554 U.S. 164 (2008). Although *Edwards* "*permits* States to insist upon representation by counsel for those competent enough to stand trial ... but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves," it does not *require* States to do so. *Id.* at 178 (emphasis added and internal quotation marks omitted). Current Nevada law does not allow the trial courts discretion to insist upon representation by counsel for a defendant who is competent to stand trial but not competent enough to personally conduct trial proceedings due to a severe mental illness, recognizing instead that a defendant has an "unqualified right to represent himself at trial so long as his waiver of counsel is intelligent and voluntary." *Tanksley*, 113 Nev. at 1000, 946 P.2d at 150 (emphasis added). As explained above, Pough validly waived his right to counsel. Thus, Judge Ellsworth's decision was correct under current Nevada law.

To the extent Pough asks us to give trial courts the discretion to insist on counsel for defendants with severe mental illnesses as allowed by *Edwards*, we decline to do so at this time. The parties do not identify compelling reasons for or against allowing that discretion, nor do they suggest a workable test for determining whether the district court properly exercised that discretion. Although our independent research has identified several tests that have developed in the years since *Edwards*, including one recently recommended by the American Bar Association, *see* Christopher Slobogin, *The American Bar Association's Criminal Justice Mental Health Standards: Revisions for the Twenty-First Century*, 44 Hastings Const. L.Q. 1, 34 (2016), we do not believe it is appropriate to adopt a test that has not been subjected to meaningful adversarial scrutiny on such an important issue.

(ECF No. 36-93 at 2-6.)

A criminal defendant has the right, under the Sixth and Fourteenth Amendments to the United States Constitution, to waive the right to counsel and represent himself. *See Faretta v. California*, 422 U.S. 806, 819-20 (1975). A defendant must "knowingly and intelligently" waive his right to counsel, however. *Id.* at 835. "[H]e should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* (citation omitted).

In *Godinez v. Moran*, 509 U.S. 389 (1993), the Supreme Court held that a defendant who waives his right to counsel need not "be more competent than a defendant

who does not, since there is no reason to believe that the decision to waive counsel requires an appreciably higher level of mental functioning than the decision to waive other constitutional rights." *Godinez*, 509 U.S. at 399. The Court reasoned that "the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself." *Id.* (emphasis in original). Thus, the Supreme Court held, a "defendant's 'technical legal knowledge' is 'not relevant' to the determination whether he is competent to waive his right to counsel," and "although the defendant 'may conduct his own defense ultimately to his own detriment, his choice must be honored.'" *Id.* at 400 (quoting *Faretta*, 422 U.S. at 834); *see also Faretta*, 422 U.S. at 835 ("a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation"); *Van Lynn v. Farmon*, 347 F3d 735, 740-41 (9th Cir. 2003).

Subsequently, in *Indiana v. Edwards*, 554 U.S. 164 (2008), a state court "insist[ed] that the defendant proceed to trial with counsel, ... thereby denying the defendant the right to represent himself," even though the state court found him "mentally competent to stand trial if represented by counsel...." *Edwards*, 554 U.S. at 167. The Supreme Court held that *Godinez*, which "involved a State that sought to *permit* a gray-area defendant to represent himself" for purposes of pleading guilty, did not "tell a State whether it may *deny* a gray-area defendant the right to represent himself" during trial. *Id.* at 173 (emphasis in original). The Supreme Court noted:

> ... [T]he nature of the problem before us cautions against the use of a single mental competency standard for deciding both (1) whether a defendant who is represented by counsel can proceed to trial and (2) whether a defendant who goes to trial must be permitted to represent himself. Mental illness itself is not a unitary concept. It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways. ... In certain instances an individual may well be able to satisfy *Dusky*'s mental competence standard, for he will be able to work with counsel at trial, yet at the same time he may be unable to carry out the basic tasks needed to present his own defense without the help of counsel.

*Id.* at 175-76. The Supreme Court went on to hold that "the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial

under *Dusky* but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Id.* at 178 (referring to *Dusky v. United States*, 362 U.S. 402 (1960)). However, the Supreme Court did not hold in *Edwards* that the federal constitution *requires* state courts to disallow self-representation where the defendant's mental illness prevents him from effectively representing himself. *See id.*[2]

Under the Supreme Court authority, and in view of the entire record in this case, this Court determines that the Nevada Supreme Court's ruling—that discharging Pough's appointed counsel and allowing Pough to represent himself at trial did not violate Pough's federal constitutional rights—was not contrary to or an unreasonable application of Supreme Court precedent, and was not based on a determination of fact that was unreasonable in light of the evidence presented.

In order to assess the reasonableness of the Nevada Supreme Court ruling, the Court starts by noting the extensive pre-trial proceedings, during which, over the course

---

[2]In his Reply, for the first time, Pough argues that 28 U.S.C. § 2254(d) is unconstitutional, that this Court therefore need not defer to the state-court ruling as required by that statute, that this Court should extend the Sixth Amendment beyond the holding of *Edwards* to require state courts to disallow self-representation where the defendant's mental illness prevents him from effectively representing himself, and that this Court should apply this new rule to Pough. (ECF No. 44 at 8-32.) Pough argues that § 2254(d) is unconstitutional because: (1) it "violates § 1 of the Fourteenth Amendment and the Due Process Clause of the Fifth Amendment, by depriving citizens in state custody of their fundamental right to meaningful federal review of the federal legality of their state detention;" (2) it "unlawfully suspends the writ of habeas corpus, in violation of Article I, § 9, cl. 2;" and (3) it "unlawfully impinge[s] on the judicial power vested exclusively in the judiciary by Article III of the Constitution." (*Id.* at 17.) Pough concedes that the latter two arguments have been rejected by the Ninth Circuit (*id.* (citing *Crater v. Galaza*, 491 F.3d 1119 (9th Cir. 2007)). The Court therefore declines to consider those arguments here. With regard to Pough's first argument—that § 2254(d) violates the Fourteenth and Fifth Amendment—he argues that because § 2254(d) requires the federal court to defer to the state courts' interpretation of federal law, in cases in which state imprisonment violates the federal constitution, the federal court is often required to "stay its hand and deny relief." (*Id.* at 23.) The Court rejects this argument as presented in this case in Pough's Reply. Although not discussed in the context of the Fourteenth and Fifth Amendments, the Ninth Circuit has held generally that "[t]he constitutional foundation of § 2254(d)(1) is solidified by the Supreme Court's repeated application of the statute." *Crater*, 491 F.3d at 1129.

of four years, the state courts regularly observed Pough and interacted with him, and

addressed the questions of his competence and his waiver of appointment of counsel. In

his amended habeas petition, Pough describes the pre-trial proceedings as follows:

> On September 21, 2009, a criminal complaint was filed against Jerry Doran Pough alleging that on or about September 20, 2009, he committed murder with use of a deadly weapon by shooting a Jerry Pough Jr. in the head with a firearm.

> On February 10, 2010, the state court ordered Pough evaluated for competency. On February 16, 2010, the state court ordered Pough committed and ordered him to appear for a competency hearing.

> On March 2, 2010, the State filed an information charging Pough with one count of murder with use of a deadly weapon.

> On March 9, 2010, psychiatrist Daniel Sussman, M.D., determined that Pough was not competent to stand trial. (ECF No. 25-2 (sealed).) On March 10, 2010, psychologist Greg Harder, Psy.D., also determined that Pough was not competent to stand trial. (ECF No. 25-3 (sealed).)

> On March 16, 2010, the state court found Pough incompetent and sent him to a mental health facility named Lake[']s Crossing. (ECF No. 47-4.) On March 25, 2010, the state court entered an order committing Pough to determine his ability to receive treatment to competency and to attain competence. (ECF No. 47-5.) On April 23, 2010, the court entered an amended order of commitment.

> On August 23, 2010, Lake[']s Crossing faxed a packet of expert reports to the court deeming Pough competent to stand trial. (ECF No. 25-4 (sealed).)

> On October 4, 2010, the court ordered Pough transported from Lake[']s Crossing to the Clark County Jail in Las Vegas, Nevada.

> On October 28, 2010, the court held a hearing regarding defense counsel's intent to challenge the competency findings from Lake[']s Crossing. (ECF No. 47-42, pp. 159–63.) During this hearing, Pough voiced his disagreement with his counsel's actions.

> On November 18, 2010, in a similar hearing, Pough again voiced his disagreement with his counsel's actions. (ECF No. 47-42 at 164-67.)

> On November 18, 2010, in a similar hearing, Pough complained that he has been totally excluded from involvement in his case. (*Id.*)

> On December 1, 2010, Pough filed a handwritten, *pro se* motion to dismiss counsel and for appointment of alternate counsel. (ECF No. 47-12.)

> On August 2 and August 9, 2011, a hearing was held at the request of the defense to challenge the finding of competency. (ECF Nos. 33-10, 33-11.) At the conclusion of the hearing, the court took the matter under advisement.

On March 22, 2012, the state court entered an order entitled "finding of competency." (ECF No. 33-12.) On April 2, 2012, the state court returned Pough to the lower Justice Court for a preliminary hearing.

On April 10, 2012, Pough filed another handwritten, *pro se* motion to dismiss counsel. (ECF No. 33-14; *see also* ECF Nos. 47-24, 47-25.) Unlike the previous motion, however, this motion requested the court "appoint defendant pro-se," as opposed to appointing substitute counsel. (ECF No. 33-14.)

On April 13, 2012, the justice court held a [*Faretta*] hearing on Pough's request to represent himself. The court granted his request. (ECF No. 33-15.)

On April 23, 2012, Pough filed a handwritten, *pro se* document he styled as follows: "'Via' Ergent Ex Parte Communications to Annual Service of Notice of Intent to Seek Grand Jury Indictment."

On April 24, 2012, the State presented this case to a Grand Jury who returned a true bill against Pough as charged. On April 25, 2012—about two and a half years after his initial arrest—the State filed an indictment charging Pough with one count of murder with use of a deadly weapon.

Pough was arraigned for the first time on May 10, 2012, in which he pleaded not guilty and invoked his right to a speedy trial.

On June 25, 2012, Pough moved to dismiss stand-by counsel. (ECF No. 36-68 at 97-105.) On July 9, 2012, the court held a hearing on Pough's motion to dismiss stand-by counsel. (ECF No. 33-47; *see also* ECF No. 33-41.)

On August 1, 2012, the court held a hearing in which it re-appointed stand-by counsel. (ECF No. 33-57.)

On August 8, 2012, the court held another hearing regarding motions and stand-by counsel. (ECF No. 33-81 at 74-84.)

The court held a hearing on August 20, 2012 regarding Pough's access to case-related documents. (ECF No. 33-62.) The court held a status check on this matter on September 5, 2012 and September 12, 2012. (ECF Nos. 33-63, 33-66.)

Between October 29, 2012 and February 4, 2014, as pre-trial litigation continued, Pough filed around 30 handwritten motions, petitions, and letters with the court. During this time, the court continued to hold various hearings and status checks.

In the meantime, on February 8, 2013, the State moved for the court to "make a determination as to whether a competency evaluation of the defendant is necessary pursuant to Nevada Revised Statute 178.405." (ECF No. 34-19.) In this motion, the State suggested "[t]he Court in this case is in a unique position because the Defendant represents himself; therefore, it is possible that he would be unable to bring competency issues to the court's attention." (*Id.* at 5.) The State pointed out that during the

February 6, 2013 hearing, "[o]n more than one occasion during the extended hearing on the motion the Defendant laughed during the proceedings. The laughter was out of context such that this Court specifically addressed the issue with the Defendant." The State argued, "this Court must exercise its discretion to have the Defendant examined pursuant to NRS 178.405." (*Id.*)

On February 11, 2013, the court held calendar call. (ECF No. 34-23.) During this hearing was a discussion about defendant's competency and records from Lake[']s Crossing. In that discussion, the court asked, "So, you're not asserting an insanity defense?" to which Pough replied, "Absolutely not. I[t]'ll never happen." (*Id.* at 10.) The court referred Pough to competency court again. (*Id.* at 29-30.)

On March 5, 2013, the court filed an order for competency evaluations. (ECF No. 34-25.)

Pough refused to see the doctors sent to the jail to evaluate him, so he was sent to Lake[']s Crossing, again, for evaluation. (*Id.*) On April 8, 2013, the court ordered Pough committed. (ECF Nos. 34-26, 34-27.)

On May 6, 2013, the court ordered Pough's return from Lake[']s Crossing. (ECF No. 34-28.)

On May 17, 2013, the court held a hearing in which it found Pough competent to stand trial. (ECF No. 34-32.)[3]

On May 29, 2013, Pough filed a handwritten, *pro se* motion to dismiss counsel and reappoint defendant *pro se*. (ECF No. 34-34.)

On May 30, 2013, the court filed a "Findings of Competency." (ECF No. 34-36.)

On June 5, 2013, the court held a hearing regarding Pough's motion to proceed *pro se* and, in the same hearing, held a status check for trial setting. (ECF No. 34-38.)

On June 12, July 10, and December 16, 2013, the court held further pre-trial hearings. (ECF Nos. 34-40, 34-42, 34-46.)

On December 23, 2013, the court held a hearing on various matters. (ECF No. 34-50.)

On December 30, 2013, the court entered an order denying defendant's motion [to compel certain discovery]. (ECF No. 34-52.)

---

[3]Neither Pough nor Respondents have provided the Court with the report from Lake's Crossing on Pough's second commitment to that facility. (*See* ECF No. 34-36 at 2-3 ("[I]t appearing that, upon medical consultation, the Administrator or his designee has reported to the Court in writing his specific findings and opinion that the Defendant is of sufficient mentality to be able to understand the nature of the criminal charge against him and, by reason thereof, is able to assist his counsel in the defense interposed upon the trial or against the pronouncement of the judgment thereafter…").)

On January 27, 2014, Pough indicated in a hearing that he is ready to go to trial. (ECF No. 34-54.)

The jury trial commenced on February 3, 2014, in which Pough represented himself. It lasted six days, ending on February 11, 2014.

(ECF No. 23 at 3-9.)[4]

As Pough's recitation of the pre-trial proceedings reflects, he was canvassed twice regarding his request to represent himself, once in the justice court on April 13, 2012 (ECF No. 33-15) and once in the trial court on June 5, 2013, about eight months before the trial commenced (ECF No. 34-38). The June 5, 2013, canvass included the following:

> The Court: …So you understand that self-representation is often unwise and that a Defendant may, in fact – you, may conduct a defense that is to your own detriment. You understand that?
>
> The Defendant: Yes ma'am.
>
> The Court: All right. You understand that you are responsible for knowing and complying with the same procedural rules as lawyers and that you can't expect help from me, the Judge, in complying with these procedural rules. You understand that?
>
> The Defendant: Oh, I've experienced that firsthand, Your Honor.
>
> The Court: All right. You understand that a Defendant that is proceeding in proper person, as a self-represented litigant, would not be allowed to complain on appeal about the competency and effectiveness of the representation. You understand that you won't in [other] words be able to complain that you had ineffective assistance of counsel if you represent yourself?
>
> The Defendant: I don't anticipate that being a problem.
>
> The Court: But do you understand it?
>
> The Defendant: Yes, I do.
>
> The Court: All right. Now, you understand that the State is going to be represented by an experienced, professional counsel, who has been trained in the law and admitted to the bar of this state. You understand that?
>
> The Defendant: Oh, what it entails is quite significant.
>
> The Court: Do you understand it?

---

[4]Pough's citations to the record are omitted, as he filed this statement of background facts before the state-court record was filed, and, therefore, could not identify the location of the materials in the record in this case. The Court replaces Pough's citations with citations to the location of the pertinent materials in the record in this case.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

The Defendant: Absolutely.

\* \* \*

The Court: All right. You understand that you – if a Defendant is unfamiliar with legal procedures that this allows the prosecutor an advantage and that you're assuming the risk if you represent yourself that you may not make effective use of your legal rights and you may make tactical decisions that produce unintended consequences. You understand that?

The Defendant: I think at this point, your Honor, I've done better than the representation I've had thus far.

The Court: Okay. So what I'm hearing from you is very similar to what the assessment, the psychological assessments of your competency were. Is that you have a grandiose expectation of your abilities to represent yourself. I'm just telling you that those may be overblown in your mind, okay?

The Defendant: Absolutely I respect that.

The Court: You understand that –

The Defendant: Absolutely I respect that.

The Court: – and wish to take the risk of representing yourself nonetheless?

The Defendant: Oh, absolutely.

17

18

19

20

21

(ECF No. 34-38 at 5-8.) The trial court went on to ask Pough about his age, his education, his ability to read and write English, whether he was taking any medications, his mental health history, whether he understood and could explain the charges against him, the possible punishments he faced, and whether he wanted standby counsel appointed. (*Id.* at 9-19.)

22

23

24

25

26

27

28

Apparently contending that the Nevada Supreme Court's rulings were based on unreasonable findings of fact (*see* 28 U.S.C. § 2254(d)(2)), Pough claims that the trial court "failed to conduct an adequate investigation into the source of the antagonism and conflicts between Pough and his appointed counsel." (*Id.* at 13.) That argument is belied by the record, however. In addition to the two formal canvasses, the trial court on several occasions discussed with Pough his relationship with his appointed counsel, as well as his appointed standby counsel and investigators, and his decision to represent himself.

(*See, e.g.*, ECF Nos. 33-33 (May 31, 2012); 33-41 (June 20, 2012); 33-57 (August 1, 2012); 36-81 at 74-84 (August 8, 2012); 33-62 (August 20, 2012); 33-63 (September 5, 2012); 33-66 (September 12, 2012); 34-8 (January 2, 2013); 34-10 (January 9, 2013); 34-18 (February 6, 2013); 34-23 (February 11, 2013); 34-25 (March 5, 2013); 34-35 (May 29, 2013); 34-46 (December 16, 2013); 34-50 (December 23, 2013); *see also* ECF Nos. 33-28, 33-29 (May 31, 2012, *pro se* filing by Pough describing disagreements with appointed counsel); 34-34 (Pough's motion to dismiss counsel after his return from second commitment to Lake's Crossing).) In light of the record of the extensive pre-trial proceedings, many of which concerned Pough's competence and his waiver of appointed counsel, the Nevada Supreme Court could reasonably have concluded that the trial court conducted an adequate investigation into the disagreements between Pough and his appointed counsel.

Pough further argues that the Nevada Supreme Court unreasonably concluded he voluntarily chose to represent himself because his only other option was representation by counsel with whom he had an irreconcilable conflict. (ECF No. 23 at 13-16.) In this regard, though, it is notable that the trial court attempted to satisfy Pough by appointing replacement counsel after he was unhappy with his first appointed counsel. (*See* ECF No. 33-15 (Pough was originally represented by Jeffrey M. Banks and Christy Craig of the public defender's office); ECF No. 34-35 (after return from second commitment to Lake's Crossing, and until he again chose to proceed *pro se*, Pough was represented by Frank P. Kocka).) But, beyond that factual matter, there is a more fundamental reason why this argument fails—there is no Supreme Court authority establishing that a criminal defendant has a right to replacement of counsel with whom he disagrees about defense strategy or counsel whom he distrusts. As the Ninth Circuit recently explained:

> Even if [the petitioner] were successfully able to demonstrate a complete breakdown in communication or prove that an irreconcilable conflict existed ... [his] irreconcilable-conflict claim would still fail. This is because the Supreme Court has never endorsed this line of precedent from our court.[5]

---

[5]Referring to *Brown v. Craven*, 424 F.2d 1166, 1170 (9th Cir. 1970); *United States v. Moore*, 159 F.3d 1154, 1158-59 (9th Cir. 1998); *Schell v. Witek*, 218 F.3d 1017, 1026

1
2
3
4
5
6
7
8
9

It has never held that an irreconcilable conflict with one's attorney constitutes a per se denial of the right to effective counsel. This proves fatal to [the petitioner's] claim because AEDPA conditions habeas relief on a determination that the state-court decision unreasonably applied "clearly established Federal law" as pronounced by the U.S. Supreme Court. 28 U.S.C. § 2254(d)(1); [*Williams v. Taylor*, 529 U.S. 362, 365 (2000)]. Although we may look to our circuit's precedent to see if we have already held a rule is clearly established, our decisions may not "be used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64, 133 S. Ct. 1446, 185 L.Ed.2d 540 (2013) (per curiam); *see* [*Parker v. Matthews*, 567 U.S. 37, 49 (2012)] (holding the Sixth Circuit erred in applying its circuit's "multistep test" that bore scant resemblance to the general rules announced by the Supreme Court). [The petitioner] does not cite to any Supreme Court case holding that an irreconcilable conflict between a lawyer and his client constitutes a constructive denial of his right to counsel, with no showing of prejudice required.

10
11
12
13
14
15
16

*Carter v. Davis*, 946 F.3d 489, 508 (9th Cir. 2019) (per curiam) (internal citation omitted).[6] This is consistent with the Supreme Court's general instruction that the Sixth Amendment does not guarantee an accused a "meaningful attorney-client relationship." *Morris v. Slappy*, 461 U.S. 1, 14 (1983). Pough does not show that it was unreasonable, under either 28 U.S.C. § 2254(d)(1) or (2), for the Nevada Supreme Court to conclude that he voluntarily chose to represent himself despite his distrust for, and disagreements with, the attorneys appointed to represent him.

17
18
19
20
21
22
23

Pough also argues: "Although the state court canvassed Pough about his [*Faretta*] rights, the totality of the record thus nonetheless establishes he could not and did not voluntarily, knowingly, and intelligent[ly] waive his right to counsel." (ECF No. 23 at 19; *see also generally id.* at 16-19.) In the context of 28 U.S.C. § 2254(d), the Court understands this to be an argument that the Nevada Supreme Court unreasonably concluded that his waiver of representation by counsel was knowing, intelligent and voluntary, despite his mental illness.

24
25
26

(9th Cir. 2000); and *Stenson v. Lambert*, 504 F.3d 873, 886 (9th Cir. 2007). *See also Carter*, 946 F.3d at 507-08.

27
28

[6]Here again, in his Reply, Pough argues for the first time that "this Court is not confined under § 2254(d) to clearly established law and can review this claim under long-standing Ninth Circuit precedent because § 2254(d) is unconstitutional." (ECF No. 44 at 40.) As is discussed in footnote 2, the Court rejects this argument.

It is beyond dispute that the state courts inquired extensively of Pough regarding his decision to represent himself (*see* citations to record at p. 14, *supra*), but Pough's position here appears to be that the trial court and, in turn, the Nevada Supreme Court came to the wrong conclusion based on the evidence. Pough's argument fails because of the deference to the state-court ruling mandated by 28 U.S.C. 2254(d)(2). There is certainly evidence in the record indicating that Pough suffered from mental illness— specifically, schizophrenia—and evidence supporting the argument that he was not competent to waive appointment of counsel, and did not do so knowingly, intelligently and voluntarily. (*See* ECF Nos. 25-2 (evaluation by Dr. Daniel Sussman); 25-3 (evaluation by Dr. Greg Harder); 33-10 at 7-13 (testimony of Dr. Norton A. Roitman); 33-10 at 13-16 (testimony of Dr. Steven Bent); 33-10 at 16-21 (testimony of Dr. Harder).) On the other hand, however, there is also substantial evidence in the record supporting the Nevada Supreme Court's conclusion that, despite his mental illness, Pough was competent to waive his right to representation by appointed counsel and did so knowingly, intelligently and voluntarily. (*See* ECF No. 25-4 (report from Lake's Crossing, after Pough's first commitment to that institution, with evaluations by Dr. H. Hale Henson, Dr. Sally Farmer and Dr. Robert F. Behrens); *see also supra* citations to record at 14.) It is not for this Court to reweigh the evidence and reach its own conclusion regarding this issue. The question for this Court is whether the state court's rulings were based on unreasonable factual determinations. *See* 28 U.S.C. § 2254(d)(2). Satisfying this standard is a "daunting" burden, "one that will be satisfied in relatively few cases." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004). The "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Rather, a federal habeas court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Taylor*, 366 F.3d at 1000. In view of the substantial evidence in the record supporting the factual determinations underlying the Nevada Supreme Court's rulings,

the Court determines that Pough has not shown the Nevada Supreme Court's rulings to be based on factual determinations that are erroneous beyond any fairminded disagreement. *See Richter*, 562 U.S. at 103; *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding ....").

Pough argues that "the state trial court misapprehended the underlying facts at issue, as the Nevada Supreme Court correctly recognized but failed to remedy." (ECF No. 23 at 19; *see also* ECF No. 44 at 44-47 (similar argument in Reply).) This argument is in reference to footnote 1 of the Nevada Supreme Court's opinion, which states:

> It seems the district court judges in this case were not fully aware of the testimony elicited at the August 2011 competency hearing about Pough's history of schizophrenia. This is concerning, because when a mentally ill defendant is permitted to represent himself and dismiss standby counsel the responsibility for evaluating his ongoing competency falls on the judge's shoulders. It is therefore vital that judges have accurate and complete information regarding a defendant's mental health. We urge the Eighth Judicial District Court to take reasonable steps to ensure that defendants who have been diagnosed as mentally ill are not relied upon as the source of information about the history of their mental illness.

(ECF No. 36-93 at 2-3 n.1.) There, the Nevada Supreme Court pointed out error in the trial court's analysis. The Nevada Supreme Court, however, did not make the same mistake. The Nevada Supreme Court was obviously aware of Pough's history of schizophrenia. (ECF No. 36-93 at 2-6.) Under 28 U.S.C. §2254(d), this Court reviews the state courts' "last reasoned decision" regarding the issue at hand. *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010). Here, that is the Nevada Supreme Court's ruling, not the state trial court's ruling. In pointing out footnote 1 in the Nevada Supreme Court's opinion, Pough does not show that the Nevada Supreme Court's ruling was unreasonable, such as would compel *de novo* review by this Court.

In sum, in view of the entire record, and affording the Nevada Supreme Court the deference mandated by 28 U.S.C. § 2254(d), this Court concludes that the Nevada Supreme Court's rulings that Pough's appointed counsel was properly allowed to

withdraw, and that Pough's waiver of appointment of counsel was knowing, intelligent and voluntary, were not based on an unreasonable determination of the facts in light of the evidence presented, and were not contrary to, or an unreasonable application of, Supreme Court precedent. The Court will deny Pough habeas corpus relief on Grounds 1 and 2.

## B. Ground 3

In Ground 3, Pough claims that his federal constitutional rights were violated because the trial court denied him resources necessary to represent himself. (ECF No. 23 at 22-23.) He describes, as follows, the resources he was allegedly denied:

> Pough was entitled to reasonable assistance to obtain full and complete discovery, to interview and subpoena witnesses and to engage in necessary legal research. Specifically, Pough needed (1) full access to the complete discovery in this case, including necessary transcripts that he was entitled to under Nevada law and the United States Constitution, (2) the opportunity to consult with potential defense witnesses, either directly or through an investigator, and to subpoena any such witnesses that would be helpful to him with the assistance of a trained investigator in a timely manner before trial, (3) the ability to do necessary legal research through reasonable access to a law library either in the jail or in the Clark County Law Library.
>
> Pough, due to structural problems inherent in self-representation and due to interference by or lack of cooperation from the county jail, had difficulties in all three areas. Pough was continually frustrated by inadequate resources once he was allowed to proceed *pro se*. Pough insists he was not given a competent investigator. There was constant conflict between him and the investigators. He was not able to subpoena witnesses in a timely manner and he was not given adequate time in the jail law library to prepare legal motions—indeed, the court wrongfully denied his motion for more law library access. One time, Pough claimed he was denied pens and paper.

(*Id.*)

Pough asserted this claim on his direct appeal, and the Nevada Supreme Court denied relief on the claim, as follows:

> Pough contends that the district court failed to provide him with adequate resources to represent himself. We disagree. Our review of the record indicates that the district court went through considerable effort to ensure that Pough was provided with necessary resources to defend himself. *See Milton v. Morris*, 767 F.2d 1443, 1446 (9th Cir. 1985) ("The rights to notice, confrontation, and compulsory process mean, at a minimum, that the time to prepare and some access to materials and

witnesses are fundamental to a meaningful right of representation." (internal quotation marks omitted)). The difficulties Pough encountered are obstructions that naturally resulted from being incarcerated. We conclude that no relief is warranted on this claim.

(ECF No. 36-93 at 7.)

This Court agrees with the ruling of the Nevada Supreme Court, and further notes that Pough's claim in Ground 3 is conclusory. Pough does not identify, with any specificity any particular resource that he was denied, and he does not explain how denial of the resource affected his defense.

Pough argues, with little analysis, that the Nevada Supreme Court's ruling is contrary to, or an unreasonable application of *Ake v. Oklahoma*, 470 U.S. 68 (1985), *Mathews v. Eldridge*, 424 U.S. 319 (1976), and *Britt v. North Carolina*, 404 U.S. 226 (1971). (*See* ECF No. 44 at 46.) *Ake* addressed the question whether a defendant, represented by counsel in a prosecution for murder, had a right to a court-appointed psychiatrist. *See Ake*, 470 U.S. at 70. *Mathews* concerned the question whether due process required an evidentiary hearing prior to termination of Social Security disability benefits. *See Mathews*, 424 U.S. at 323. And, in *Britt*, the Supreme Court considered whether a defendant represented by counsel in a murder prosecution had a right to a free transcript of the first trial, which ended in a mistrial, for use in a retrial. *See Britt*, 404 U.S. at 226-27. None of these cases is pertinent to the issue here. Pough does not show the Nevada Supreme Court's ruling to be contrary to, or an unreasonable application, of any of these authorities or any other Supreme Court authority. The Court will deny Pough habeas corpus relief on Ground 3.

### C. Ground 4

In Ground 4, Pough claims that his federal constitutional rights were violated because the Nevada Supreme Court "den[ied] [him] the right to represent himself on appeal." (ECF No. 23 at 24.)

While his direct appeal was pending, Pough apparently changed his mind about having counsel for the appeal and requested leave to represent himself, and his appellate counsel moved to withdraw. In an order filed on May 8, 2015, the Nevada Supreme Court

denied appellate counsel's motion to withdraw. (ECF No. 36-58.) The Nevada Supreme Court stated that Pough had "no constitutional right to represent himself in [his] direct appeal from the judgment of conviction." (*Id*. at 4.) The Nevada Supreme Court accurately cited *Martinez v. Court of Appeal of California*, 528 U.S. 152 (2000), for the proposition that there is no federal constitutional right for a criminal defendant to represent himself on appeal from a judgment of conviction.

Pough's claim in Ground 4 is meritless, because it is foreclosed by *Martinez*. *See Martinez*, 528 U.S. at 163 ("[W]e conclude that neither the holding nor the reasoning in *Faretta* requires California to recognize a constitutional right to self-representation on direct appeal from a criminal conviction.").

To the extent that Pough argues that the Nevada Supreme Court simply abused its discretion in denying his request to represent himself on appeal, that is an argument based on state law, and it is not a ground for federal habeas corpus relief. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[S]tate court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.") (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *see also Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("A mere error of state law ... is not a denial of due process.").

The Nevada Supreme Court's order denying Pough's request to represent himself on appeal was not contrary to, or an unreasonable application of, *Martinez*, or any other Supreme Court precedent. The Court will deny Pough habeas corpus relief on Ground 4.

### D.  Ground 5

In Ground 5, Pough claims that his federal constitutional rights were violated because the state courts denied him a speedy trial. (ECF No. 23 at 25.)

Pough asserted this claim on his direct appeal, and the Nevada Supreme Court denied relief on the claim, as follows:

> Pough contends that the district court violated his right to a speedy trial. "In determining whether a criminal defendant has been denied the right to a speedy trial, this court must consider four factors: the length of the

1
2
3
4
5
6
7
8
9
10

delay, the reason for the delay, the defendant's assertion of his right to a speedy trial, and the prejudice to the defendant caused by the delay." *State v. Fain*, 105 Nev. 567, 568, 779 P.2d 965, 966 (1989) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). Regarding the first two factors, although the delay between accusation and trial was substantial, almost all of it was attributable to Pough due to questions about his competency, *see* NRS 178.405 (requiring suspension of the proceedings when doubt arises regarding the defendant's competence), or his requests for continuances. The rest of the delay was apparently related to issues with the district court's calendar, and Pough explicitly or implicitly agreed to that delay. *See Bailey v. State*, 94 Nev. 323, 324, 579 P.2d 1247, 1248 (1978) (holding that a "224-day delay was not inordinate due to the congestion of the trial calendar"). Regarding the third factor, Pough did not assert his speedy-trial right in an unequivocal manner; rather, he asserted the right while simultaneously requesting that the proceedings be stayed. Finally, Pough does not explain how he was prejudiced, *see Sheriff, Clark Cty. v. Berman*, 99 Nev. 102, 107, 659 P.2d 298, 301 (1983) ("While a showing of prejudice to the defense is not essential, courts may weigh such a showing (or its absence) more heavily than other factors."), and this is not a case where prejudice should be presumed. We conclude that no relief is warranted on this claim.

11   (ECF No. 36-93 at 7-8.) The Nevada Supreme Court's ruling was reasonable.

12   The Sixth and Fourteenth Amendments to the United States Constitution

13   guarantee criminal defendants in state court the right to a speedy trial. *See* U.S. Const.

14   amend. VI, cl. 1; *Barker v. Wingo*, 407 U.S. 514, 515 (1972). A delay of four years

15   between accusation and trial is enough to trigger analysis under *Barker*, and the Nevada

16   Supreme Court properly conducted such an analysis. *See Doggett v. United States*, 505

17   U.S. 647, 652 n.1 (1992); *United States v. Tanh Huu Lam*, 251 F.3d 852, 856 (9th Cir.

18   2001). Under *Barker*, to determine whether there has been a speedy trial violation, courts

19   balance the "[l]ength of delay, the reason for the delay, the defendant's assertion of his

20   right, and prejudice to the defendant." *Barker*, 407 U.S. at 530. The right to a speedy trial

21   is "amorphous," and "necessarily relative," and its application "depends upon

22   circumstances." *Id.* at 522 (internal quotation marks omitted). Delays attributed to

23   determining a defendant's competence to stand trial are excluded from the speedy trial

24   analysis. *See Trueblood v. Wa. State Dep't of Soc. & Health Servs.*, 822 F.3d 1037, 1044

25   (9th Cir. 2016).

26   Applying these principles, and in view of all the circumstances, the Nevada

27   Supreme Court's ruling was not an unreasonable application of *Barker* and was not based

28

on an unreasonable determination of the facts in light of the evidence. The Court will deny

Pough habeas corpus relief on Ground 5.

### E.  Ground 6

In Ground 6, Pough claims that his federal constitutional rights were violated

because the trial court violated his right to confront adverse witnesses. (ECF No. 23 at

26-29.) Pough points out four occasions during his cross-examination of witnesses when

the prosecutor objected to his questions—three times on the ground of relevance, and

once on the ground that the question was confusing—and the trial court upheld the

objections, and he points to one occasion when the trial court, acting *sua sponte*,

intervened and disallowed a question asked by Pough because it was compound. (*Id.*)

Pough asserted this claim on his direct appeal, and the Nevada Supreme Court

denied relief on the claim, as follows:

> Pough contends that the district court unreasonably interfered with
> his questioning of witnesses. Pough did not object on this ground and fails
> to demonstrate plain error. *See Browning v. State*, 124 Nev. 517, 533, 188
> P.3d 60, 71 (2008) ("Generally, the failure to object precludes appellate
> review absent plain error."). Pough often struggled to frame his questions
> and asked about matters which went beyond the appropriate scope of
> examination. The district court intervened to prevent inappropriate matters
> from being discussed in front of the jury and to move trial along. *See Duckett
> v. State*, 104 Nev. 6, 13, 752 P.2d 752, 756 (1988) (holding that it is not
> inappropriate for the district court to ask questions when it feels the need to
> clarify matters or expedite trial). We conclude that no relief is warranted on
> this claim.

(ECF No. 36-93 at 8-9.) Pough does not show the Nevada Supreme Court's ruling to be

contrary to, or an unreasonable application of, Supreme Court precedent.

A criminal defendant's Sixth Amendment rights include the right to cross-

examination, *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974), and the right to present

relevant evidence, *Michigan v. Lucas*, 500 U.S. 145, 149-52 (1991). "[T]rial judges retain

wide latitude insofar as the Confrontation Clause is concerned to impose reasonable

limits on cross-examination based on concerns about, among other things, harassment,

prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or

only marginally relevant." *Wood v. Alaska*, 957 F.2d 1544, 1549 (9th Cir. 1992).

The Nevada Supreme Court reasonably ruled that the trial court did not limit Pough's cross-examination of witnesses, such as to violate his constitutional right to confront adverse witnesses. The trial court's rulings were appropriate rulings on the relevance and admissibility of evidence and appropriate attempts to prevent confusing questioning by Pough. The Court will deny Pough habeas corpus relief on Ground 6.

## F.  Ground 7

In Ground 7, Pough claims that his federal constitutional rights were violated because the evidence at trial was insufficient to prove him guilty of first-degree murder beyond a reasonable doubt. (ECF No. 23 at 30-31.)

Pough asserted this claim on his direct appeal, and the Nevada Supreme Court denied relief on the claim, ruling as follows:

> Pough contends that insufficient evidence supports his conviction. Our review of the record on appeal, however, reveals sufficient evidence to establish guilt beyond a reasonable doubt as determined by a rational trier of fact. *See Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The State presented evidence that Pough, his adult son, and two witnesses were driving home after a night out. Pough, who was angry with his son for driving in the wrong direction, pulled out a firearm. One of the witnesses testified that he saw Pough raise the firearm and shoot his son in the head. Viewed in the light most favorable to the State, a rational trier of fact could have concluded based on these facts that Pough committed a willful, deliberate, and premeditated murder. *See* NRS 200.010 ("Murder is the unlawful killing of a human being with malice aforethought"); NRS 200.020(1) ("Express malice is that deliberate intention unlawfully to take away the life of a fellow creature."); NRS 200.030(1)(a) (first-degree murder is a willful, deliberate, and premeditated killing). Although the other witness testified that she saw Pough's son reach for the gun before it went off, arguably supporting Pough's claim that the shooting was an accident, "it is the function of the jury, not the appellate court, to weigh the evidence and pass upon the credibility of the witness[es]." *Walker v. State*, 91 Nev. 724, 726, 542 P.2d 438, 438-39 (1975). Moreover, the evidence established that there were multiple gunshots, supporting the State's theory that the killing was not accidental. The jury's verdict will not be disturbed on appeal where, as here, substantial evidence supports the verdict. *See Bolden v. State*, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981); *see also McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992).

(ECF No. 36-93 at 6-7.)

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with

which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). However, a federal habeas petitioner "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Addressing such a claim in a federal habeas corpus proceeding, the Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). If the facts support conflicting inferences, the reviewing court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.

This claim is without merit. The evidence at trial was such that a reasonable trier of fact could have found Pough guilty of first-degree murder. The Nevada Supreme Court's rejection of this claim was reasonable. The Court will deny Pough habeas corpus relief on Ground 7.

### G.  Ground 8

In Ground 8, Pough claims that his federal constitutional rights were violated because, during the penalty phase of his jury trial, the trial court allowed testimony about his prior arrests. (ECF No. 23 at 31-32.) Pough claims that it was a constitutional violation to admit evidence of mere arrests. (*Id.*; *see also* ECF No. 35-20 at 86-96 (Testimony of Ronald Acuna).)

Pough asserted this claim on his direct appeal, and the Nevada Supreme Court denied relief on the claim, as follows:

> Pough contends that his right to due process was violated at his sentencing hearing when the prosecutor admitted his arrest record. Pough did not object and fails to demonstrate plain error. *See* [*Browning v. State*, 124 Nev. 517, 533, 188 P.3d 60, 71 (2008)]. At a penalty hearing, the jury may consider "any other matter which the court deems relevant to the sentence, whether or not the evidence is ordinarily admissible." NRS 175.552(3). This includes uncharged offenses. *Nunnery v. State*, 127 Nev. 749, 769, 263 P.3d 235, 249 (2011) (recognizing that uncharged crimes may be admitted at a penalty hearing as "other matter evidence"); *see*

1
2

*generally Denson v. State*, 112 Nev. 489, 494, 915 P.2d 284, 287 (1996) ("[A] district court has wide discretion to consider prior uncharged crimes during sentencing.").

3

(ECF No. 36-93 at 6-7.)

4
5
6

The Nevada Supreme Court's ruling that the admission of evidence of Pough's arrests in the penalty phase of his trial did not violate Nevada law is beyond the scope of this federal habeas action. *See Bradshaw*, 546 U.S. at 76.

7
8
9
10
11
12
13
14
15
16
17

Pough does not point to any authority supporting his contention that admission of his arrest records in the penalty phase of his trial violated his federal constitutional rights. Pough cites *United States v. Tucker*, 404 U.S. 443, 447 (1972), and *Townsend v. Burke*, 334 U.S. 736, 741 (1948), for the proposition that a defendant's constitutional right to due process of law precludes sentencing on the basis of inaccurate information about his criminal history, but Pough makes no showing that the information presented about his prior arrests was inaccurate. *Tucker* and *Townsend* do not support Pough's claim that admission of such evidence violated his federal constitutional rights. Pough does not show that the Nevada Supreme Court's denial of relief on this claim was contrary to, or an unreasonable application of, *Tucker* or *Townsend*, or any other United States Supreme Court precedent. The Court will deny Pough habeas corpus relief on Ground 8.

18

### H.  Ground 9

19
20
21
22
23

Finally, in Ground 9, Pough claims that his federal constitutional rights were violated because of the cumulative effects of the errors he alleges. (ECF No. 23 at 32.) However, as the Court determines that Pough has not shown there to have been any error, there are no errors to consider cumulatively, and the claim in Ground 9 fails. The Court will deny Pough habeas corpus relief on Ground 9.

24

### I.  Certificate of Appealability

25
26
27

The standard for issuance of a certificate of appealability requires a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). The Supreme Court has interpreted 28 U.S.C. § 2253(c) as follows:

28

1
2
3
4
5
6

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where, as here, the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

7
8

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79 (9th Cir. 2000).

9
10

Applying the standard articulated in *Slack*, the Court finds that a certificate of appealability is warranted with respect to Grounds 1 and 2.

11

**V.   CONCLUSION**

12
13

It is therefore ordered that Petitioner's Amended Petition for Writ of Habeas Corpus (ECF No. 23) is denied.

14
15
16

It is further ordered that Petitioner is granted a certificate of appealability with respect to Grounds 1 and 2 of his Amended Petition for Writ of Habeas Corpus (ECF No. 23). Petitioner is denied a certificate of appealability in all other respects.

17

The Clerk of Court is directed to enter judgment accordingly and close this case.

18

DATED THIS 3rd Day of November 2020.

19
20
21
22

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

23
24
25
26
27
28